IN THE MATTER OF THE CONFLICTING LAND CLAIMS OF JOHN DUNN, APPELLANT, *v.* LORIN R. KETCHUM, RESPONDENT.

STATE LAND—PURCHASE OF.—Under the Act of April 27, 1863, no title to the land, and no right of possession or of purchase, inchoate or otherwise, attaches from any proceedings taken, until a certificate of the oath, prescribed by the twenty-eighth section of the statute, is indorsed on the description of the land, and filed in the office of the County Recorder.

OATH—BEFORE WHAT OFFICERS TO BE TAKEN.—When a statute does not designate the particular officer by whom a required oath may be administered and certified, it may be taken before any officer having general authority to administer and certify oaths.

APPEAL from the District Court of the Thirteenth District, County of Tulare.

This proceeding arose under the provisions of the statute directing the Surveyor General, in certain cases, to refer the contest between conflicting claimants of State lands to the decision of the District Court.

Judgment was entered in favor of Ketchum, and Dunn appealed.

The case is stated in the opinion.

*H. P. Barber*, for Appellant.

It is *clearly* evident that, under the provisions of the statute, the following requisites are necessary to enable the first applicant to perfect his *right* to purchase the land sought :

*First*—That he shall make affidavit required by Sec. 3.

*Second*—That he shall file his application and said affidavit in the County Surveyor's office, as required by Sec. 3.

*Third*—That he shall take and subscribe the oath required by Sec. 28.

*Fourth*—That he shall file in the County Recorder's office the certificate of the oath required by Sec. 28, with a particular description of the land claimed, as required by Sec. 29.

A party claiming statute title to land, must show a *full* compliance with the prescribed provisions. (*Sweetland* v. *Froe*, 6 Cal. 144; *Wright* v. *Whitesides*, 15 Cal. 47.)

He who claims property by virtue of a grant, must comply with the conditions of such grant. (2 Wash. on Real Property, 547; *Megerle* v. *Ashe*, 33 Cal. 92; *Mott* v. *Hawthorne*, 17 Cal. 58.)

*Williams & Thornton*, for Respondent.

It seems to have been the policy of the law to secure the ownership of the lands mentioned in the Act to citizens who could stand the *test* of loyalty indicated in the provisions of the oath ; and to that end, the provisions of the Act are such as not to require the oath to be taken until something like

*ownership* is attained. The provisions of the law are satisfied if the oath is taken when the officers of the State are about to do some act conferring ownership or dominion, and its provisions are not violated if the oath is not taken during the preliminary stages of the application, when it is uncertain whether the applicant will be invested with any right of property in the land asked for. While the preliminaries are going on, the matter of taking this oath is regarded as idle and useless; and the State, in bestowing the right to purchase, requires no such manifestation of loyalty until she choses to confer some right of property.

For this reason, the language used in the twenty-eighth and twenty-ninth sections is selected—and the significance of the words used is apparent.

Now, we contend that the Act does not require the oath to be taken until something has been done, by which a right to the land of some character passes to the applicant. This is not the case until the certificate of purchase issues, for until then, the applicant has not a right to take possession. If he takes possession, he is a trespasser. He has no right of property until he has paid some portion of the purchase money; and, until that time, according to the principles of the judgment of this Court in the *People* v. *Shearer* (30 Cal. 645), the State might take away his right to apply for the land. Until he has paid something, he stands on a privilege, or preference right, extended to him by the bounty of the State—not on a right of property guaranteed to him by its laws. The State, in so shaping its legislation as to deprive him of this *privilege*, does nothing unconstitutional, for it deprives him of no property. The preference right of application is not affected by reason of not taking this loyalty oath. The privilege of applying, with its priority, is still conserved to the applicant to purchase. The mere application, with its survey and location made by the County Surveyor, even if approved by the Surveyor General, gives no "*title to, interest in, or right of possession or occupation*" of the land (language used in *twenty-eighth* section), nor does it "*attach*" the "*right*" (language of *twenty-ninth* section) of the applicant to the land. This is not the case until the

applicant pays such part of the purchase money as is required by law, and puts himself in the position where he has a right to demand a certificate of purchase. If the Surveyor General does approve the survey, the applicant may decline to proceed further in his application, and abandon it. He can abandon at any time, by declining to proceed until he has obtained his certificate of purchase. If he has obtained that document, he must abandon by acknowledgment and re-conveyance to the State, and a surrender of the certificate of purchase. (See Sec. 10.)

Certainly there is no title or right in the land itself until there has been a payment by the purchaser, and a right exists to have the certificate of purchase; and this seems to be the view taken by the law-makers, for no re-conveyance is required for abandonment until such a certificate has been issued to the applicant. (See Sec. 10.)

In the *People* v. *Shearer*, this Court points out the distinction between the *privilege of pre-emption* given by the law, and a *right or title to, or interest in,* the land. The privilege exists until the payment of the purchase money; it then becomes a right, vested in the pre-emptor. Until the right vests by payment of the purchase money, the pre-emptor has only a privilege, which the Government can constitutionally deprive him of. (See 30 Cal. pp. 647–8.)

SAWYER, C. J., delivered the opinion of the Court:

On the 10th of March, 1868, respondent, Ketchum, applied to the County Surveyor of Tulare County for the purchase of the tract of land in question, under "An Act to provide for the sale of certain lands belonging to the State," approved April 27, 1863 (Stats. 1863, 591). He at the same time subscribed and filed with the County Surveyor the affidavit required by the third, and the oath required by the twenty-eighth sections of said Act, but no certificate of the oath required by the latter section or description of the land had been filed in the office of the *County Recorder* of said County of Tulare at the time of the commencement of this proceeding. The County Surveyor transmitted duplicate copies of

the field notes of the survey of the land, and of the said affidavit and oath, to the Surveyor General, and they were filed in his office on the 11th of April, 1868.

Some two months after Ketchum's application, to wit, on the 12th of May, 1868, appellant, Dunn, subscribed the oath prescribed by Section 28 of said Act, and filed in the office of the County Recorder of said county the certificate of the oath, indorsed upon a description of the land. He also made and subscribed the affidavit required by Section 3 of the Act, filed the same in the office of the County Surveyor, and made in due form a similar application to purchase the same land. Whereupon the County Surveyor also transmitted the proper papers to the Surveyor General, and they were filed in his office on the 25th of May, 1868. Upon demand of Ketchum, the contest for the purchase between the parties was referred by the Surveyor General, under the statute, to the District Court of the Thirteenth Judicial District, which determined the contest in favor of Ketchum. Dunn appeals.

No rights or equities of any kind are shown in favor of either party, except such as arise under the said statute, from the acts already stated. Ketchum took the first step in the proceedings to purchase, but he did not do all that was required by the statute, while Dunn commenced two months later, and did do everything prescribed. The question is, Did any right whatever attach under the statute in favor of Ketchum by the acts thus performed by him, before a right attached in favor of Dunn, in consequence of the acts performed by him? Section 28 provides that: " No location of land made under the provisions of this Act, or any proceedings in accordance therewith, shall be construed to give any title to, interest in, or right of possession or occupation of any of the public lands in this State, unless the person for whose benefit the location is made, or the proceedings taken, shall have first taken and subscribed the following oath or affirmation," etc. And Section 29, that : " The certificate of the oath or affirmation prescribed in the preceding section shall be indorsed on a description of the

land over which ownership or control is sought to be acquired, setting forth when the land has been surveyed by the General Government; the section and subdivision of the section, town and range in which such land is situated; and the said description, with the certificate of the oath or affirmation indorsed as prescribed by this section, shall be filed in the office of the Recorder of the county in which the land described is situated; and the right of the person making the oath or affirmation shall not be deemed to attach to such land by virtue of any proceedings under this Act, until the moment of the filing of the description and certificate of the oath or affirmation in the office of the County Recorder; and no certificate of purchase or patent shall be issued to any person for lands located under this Act until a certified copy of said description and oath or affirmation has been filed in the office of the State Register." (Stats. 1863, 600.)

It seems clear to us, that, under this provision, no right whatever, inchoate or otherwise, attaches under the statute till the certificate of the oath prescribed by the twenty-eighth section, indorsed on a description of the land, is filed in the office of the County Recorder. Such appears to be the express provision. It is, that " the right of the person making the oath or affirmation *shall not be deemed to attach to such land* by virtue of any proceeding under this Act, *until the moment of the filing* of the description and certificate of the oath or affirmation *in the office of the County Recorder.*" The Act itself, then, fixes the moment when the right attaches by virtue of proceedings under the Act, and says it shall not attach before that moment. It was undoubtedly competent for the Legislature to determine the acts necessary to be performed before any right should be deemed to attach, and for the purpose of obviating any uncertainty on this point it was highly proper to do so. There is no right whatever shown in this case, unless one arises from the proceedings had under the Act, and no other is claimed. Ketchum had not performed an Act which the statute expressly makes an essential prerequisite to the attaching of any right under its provisions at the time when all the prescribed acts had been fully performed by Dunn. The lands were open to the pur-

chase of all upon the same terms.   As no right had attached
in favor of Ketchum under the statute or otherwise, we do
not perceive how there could be anything to prevent a right
from attaching in favor of Dunn, upon a complete perform-
ance by him of all the acts prescribed.   The lands were cer-
tainly open for purchase under the statute, until a right of
some sort should attach in favor of some party; otherwise
all lands, by acts giving no rights to the party performing
them, might be withdrawn from the operation of the statute,
and the policy of the law, and the sale of the State lands, be
defeated.   In this case Dunn first performed all the acts
required by the statute, as a condition precedent to the
attaching of *any right* under its provisions, and we think
he is entitled to make the purchase rather than Ketchum.

It is claimed that Sections 28 and 29 are inoperative,
because no officer is designated to administer and certify
the oath.   When an affidavit is required to be made, or an
oath administered and certified, and the statute does not
designate the particular officer before whom the act may be
performed, it may be done before any officer having general
authority under the public statutes of the State to administer
and certify oaths.   In other provisions of this very Act, as
in the third section, it is expressly provided that the affida-
vit may be made before "any person competent to adminis-
ter oaths."   Of course, the officer administering the oath is
the proper one to certify it.

We think the District Court erred in determining the
contest in favor of Ketchum.

Judgment and order reversed, and the District Court
directed to enter judgment in favor of the appellant, Dunn.